**In re John L. INDRI.**

**Bankruptcy No. 90–34225.**

United States Bankruptcy Court,
D. New Jersey.

April 24, 1991.

---

**444**

John L. Indri, pro se.

Helen Davis Chaitman, Ross & Hardies, Somerset, N.J., for Federal Storage Warehouses.

## OPINION

WILLIAM H. GINDIN, Chief Judge.

### I. Introduction

Presently before the court are the motions of John L. Indri, the debtor herein, to avoid a pre-petition lease termination and to extend the time in which to assume or reject the subject lease. For the reasons set forth below, this court has determined that the lease termination was a transfer for purposes of 11 U.S.C. §§ 547, 548.

1. There is some dispute as to whether Federal leased the property to another tenant. Federal contends that, on September 1, with the debtor's knowledge, it leased the farmland to another tenant, who made an enormous investment in preparation for the coming growing season.

### II. Facts

The facts necessary to describe the instant dispute may be summarized briefly. The leasehold at issue concerns a residence and three hundred forty seven acres of farmland. On August 15, 1990, Federal Storage Warehouses ("Federal") terminated debtor's lease for non-payment of rent.[1] The debtor filed the instant Chapter 11 petition on October 18, 1990. This Court then granted Federal's motion to compel the debtor, as a holdover tenant, to pay use and occupancy for the first floor of the residence on November 14, 1990. Shortly thereafter, debtor brought motions (1) to avoid the lease termination as either a fraudulent transfer pursuant to 11 U.S.C. § 548 or a voidable preference pursuant to 11 U.S.C. § 547 and (2) to extend time to assume or reject the subject lease.

### III. Discussion

■ Prior to addressing the substantive merits of the pending motions, the court is faced with a threshold procedural issue which must be addressed at the outset. This court recognizes that actions for avoidance under 11 U.S.C. §§ 547 and 548 must be brought by way of adversary proceeding. Bankruptcy Rule 7001(1) specifically lists actions "to recover money or property" among the types of actions properly brought by way of an adversary action. As a result, this court must determine whether the motion to avoid the transfer has been properly brought in accordance with the Bankruptcy Code and Rules.

The Court of Appeals for the Third Circuit has dealt with the issue of compliance with Bankruptcy Rule 7001 in the context of proceedings to avoid liens and to recover property. In the case of In re McKay, 732 F.2d 44 (3d Cir.1984), the Circuit Court reversed the orders of the bankruptcy court and the district court confirming the debtor's Chapter 13 plan which contained a

The debtor, however, requests discovery to show that Federal is farming the land for their own profit. The factual determination of this issue is not necessary to a resolution of the matter before the court at this time.

list of liens to be avoided. The *McKay* court held that an action to avoid a lien under § 522(f) had to be brought by way of adversary proceeding rather than merely being listed in the Chapter 13 plan and reversed the order of confirmation. *Id.* at 48.

In a similar case, the Court of Appeals for the Ninth Circuit required a Chapter 11 trustee to file adversary proceedings where he intended to exercise certain statutory avoiding powers. In *In re Commercial Western Finance Corp.*, 761 F.2d 1329 (9th Cir.1985), the trustee attempted to avoid purported security interest pursuant to 11 U.S.C. § 544 as part of the debtor's Chapter 11 plan. The Circuit Court, however, recognizing the express language of Bankruptcy Rule 701,[2] also concluded that such actions must be brought by way of adversary proceeding.

This court is further persuaded by the Note to Bankruptcy Rule 7001 drafted by the Advisory Committee on Bankruptcy Rules which expressly states that "[p]roceedings to which the rules in Part VII apply directly include those brought to avoid transfers by the debtor under §§ 544, 545, 547, 548 and 549 of the Code...." *See also* 9 *Collier on Bankruptcy* ¶ 7001.01 (15th Ed.1990). The Committee Note recognizes the need to maintain consistency in practice between the bankruptcy courts and the district courts which is at the heart of the adversary proceeding framework.

Resolving this procedural hurdle also involves a clear understanding of the relief sought and the distinction between a judgment and an order. A judgment has been defined as "a formal utterance or pronouncing of an authoritative opinion after judging." *Webster's Third New International Dictionary* 1223 (Unabridged Ed. 1976); *See also Black's Law Dictionary* 997 (4th Ed.1951). An order, however, is a "command or direction of a court." *Webster's Dictionary* at 1588; *See also Black's Dictionary* at 1247. This debtor seeks a determination that the lease termination may be avoided under either 11 U.S.C. § 547 or § 548. The determination which this debtor seeks is a judgment and not an order. Bankruptcy Rule 9013 defines a motion as a request for an order. Accordingly, the judgment must be sought by way of an adversary proceeding.

Because this court finds that the instant matter must be brought by way of an adversary proceeding, the court will not decide the ultimate issue in the case, the avoidability of the lease termination, on this motion. It is, however, helpful to make an initial determination as to whether or not the lease termination is a transfer under the Code.

Both parties properly acknowledge that a debtor cannot assume an executory contract or a lease which was validly terminated prior to the institution of bankruptcy proceedings. *In re Triangle Laboratories, Inc.*, 663 F.2d 463, 467–68 (3d Cir.1981); *In re Jolly*, 574 F.2d 349 (6th Cir.), *cert. denied*, 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978); *Robertson v. Langdon*, 72 F.2d 148 (7th Cir.1934). If the termination was not valid, however, the lease is property of the estate, and accordingly, the debtor-in-possession[3] may assume or possibly extend the time in which to assume or reject the lease pursuant to the terms of 11 U.S.C. § 365.

To resolve the instant dispute, this court must determine whether the lease termination at issue constitutes a "transfer" avoidable under § 547(b)(4)(A) as a voidable preference, or under § 548 as a fraudulent transfer. It is axiomatic that in order for a transaction to be subject to scrutiny under either of these two sections of the Code there must have been a "transfer" within the meaning of the statute.

---

**2.** The court looked to Bankruptcy Rule 701 because the subject case had been confirmed prior to August 1, 1983, the date of enactment of the new Bankruptcy Rules. The court properly recognized that current Bankruptcy Rule 7001 is essentially the equivalent of old Rule 701. *Commercial Western*, 761 F.2d at 1336 n. 14.

**3.** Although § 365 only refers to the trustee's power to assume or reject executory contracts or unexpired leases, § 1107 of the Code makes § 365 applicable to debtors-in-possession.

The term "transfer" is defined in § 101(50) of the Code, which provides:

> (50) "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or *parting* with property or *with an interest in property*, including retention of title as a security interest and foreclosure of the debtor's equity of redemption;

11 U.S.C. § 101(50) (emphasis added). It is apparent from the Code's broad language that a pre-petition lease termination constitutes a transfer within the meaning of § 101(50). *In re Queen City Grain, Inc.*, 51 B.R. 722, 726 (Bankr.S.D.Ohio 1985).

Only a few published decisions have addressed the avoidance of lease terminations as fraudulent transfers. *See In re Ferris*, 415 F.Supp. 33 (W.D.Okla.1976), *In re Pinto*, 89 B.R. 486 (Bankr.E.D.Pa.1988); *In re Edward Harvey Co.*, 68 B.R. 851 (Bankr.D. Mass.1987); *In re Queen City Grain, Inc.*, 51 B.R. 722 (Bankr.S.D.Ohio 1985); *In re Fashion World, Inc.*, 44 B.R. 754 (Bankr. D.Mass.1984). *See generally* Goodman, *Avoidance of Lease Terminations as Fraudulent Transfers*, 43 Bus.Law 807 (May 1988).

In *Queen City*, the lessee's bankruptcy trustee filed a fraudulent transfer action against the lessor of the terminated lease and the subsequent purchaser of the property, Cargill, Inc. ("Cargill"), to avoid the pre-petition lease termination. The court rejected Cargill's argument that the case merely involved the termination of a lease by reason of default, and that, as a matter of law, there was no "transfer." *Queen City*, 51 B.R. at 724. The court noted the broad language of the Bankruptcy Code's definition of the term transfer and held that:

> Extended consideration of the question is unnecessary. There is just no getting away from the fact that upon the termination of [Queen City Grain]'s lease, there was a "parting with ... an interest in property," for after the termination of the lease [Queen City Grain] no longer had an interest in the Kellogg Avenue grain elevator facility. It was expressly

held in *In re Ferris*, 415 F.Supp. 33 (D.C.Okla.1976) to that effect. (While that case applied to the Bankruptcy Act, the predecessor of the legislation now in place, we believe it to be valid under the Bankruptcy Code.) Cargill argues against this result with extensive citation of authority intended to demonstrate that upon the termination of a lease for cause, and Cargill extends this proposition to other kinds of contracts, there is a kind of natural death which the cases hold does not amount to a fraudulent conveyance. Where that occurs, says Cargill, there has been no transfer, that is, there was something other than a transfer. We disagree with this analysis by Cargill. While there may have been no fraudulent conveyances in the several cases relied upon by Cargill, there was no decision in them that there was not a transfer.

*Id.* at 726.

An examination of the authorities cited above makes it clear that the instant pre-petition lease termination constitutes a "transfer" within the meaning of § 548 of the Code. The termination of debtor's lease was a "parting ... with an interest in property." After the lease termination, the debtor no longer had an interest in the residence and the farmland. Consequently the lease termination was a transfer.

Counsel for Federal urges this court to conclude that *In re Triangle Laboratories, Inc.*, 663 F.2d 463 (3d Cir.1981) precludes a determination that the pre-petition termination of the lease may be a fraudulent transfer. Much like the cases cited by the defendant in *Queen City*, however, the Circuit Court in *Triangle Laboratories* never addressed whether a pre-petition lease termination is a "transfer" that may be avoided as a fraudulent conveyance under § 548. The *Triangle Laboratories* court merely held that "an executory contract or lease *validly* terminated prior to the institution of bankruptcy proceedings is not resurrected by the filing of a petition in bankruptcy, and cannot therefore be included among the debtor's assets." *Triangle Laboratories*, 663 F.2d at 467–48. (empha-

sis added). Stated as such, the Circuit Court's holding in *Triangle Laboratories* is inapposite to this court's conclusion that the lease termination is a transfer as defined by the Code and the authorities cited above.

### IV. Conclusion

For the foregoing reasons, this court concludes that the lease termination was a transfer within the meaning of the applicable sections of the Bankruptcy Code. In order to determine the avoidability of the transfer, the debtor is to initiate an adversary proceeding within fourteen (14) days of the filing of this opinion with trial to take place thereafter.